UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JASON POPEJOY, JOE SAWYER, and DANIEL SULLIVAN,** *individually and on behalf of all others similarly situated*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **SHARP ELECTRONICS CORPORATION,** <br><br> **Defendant.** | Civ. No. 2:14-06426 (WJM) <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Jason Popejoy, Joe Sawyer, and Daniel Sullivan filed this putative class action against Defendant Sharp Electronics Corporation ("Sharp"). This matter comes before the Court on Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike the nationwide class allegations from the Complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**, and Defendant's motion to strike is **DENIED**.

**I.   BACKGROUND**

The following facts are alleged in the Complaint. Sharp is "a well-known electronics manufacturer and a significant player in the U.S. television market." Compl. ¶ 20, ECF No. 1. Plaintiffs contend that Sharp has engaged in "a massive consumer fraud" by "deceptively labeling" certain of its televisions as "LED TVs," "LED HDTVs," or "LED televisions." *Id.* ¶¶ 5, 9.

**A.  The Development of LED TVs**

Some background on television technology is helpful in understanding Plaintiffs' claims. Until the late 1990s, most televisions used "direct view CRT-technology (cathode ray tubes)" to produce images. Compl. ¶ 22. These televisions were large and boxy, and they were generally available only in sizes up to 37 inches diagonally. *Id.* ¶

1

27. During the early 2000s, manufacturers introduced "plasma display televisions" that were thin and light enough to be mounted on a wall. *Id.* ¶ 30.

During the early-to-mid 2000s, manufacturers introduced new, flat-panel televisions employing liquid crystal displays ("LCD"). Compl. ¶ 35. Early televisions employing LCD technology used cold cathode fluorescent lights ("CCFLs") as their light source. *Id.* ¶ 39. The Court will refer to televisions with CCFL-lit LCD panels as "CCFL-lit LCD TVs."

Manufacturers – while continuing to use LCD panels – replaced CCFLs with light emitting diodes ("LEDs") in later models. Compl. ¶ 41. The Court will refer to this category of televisions, which use LCD panels illuminated by LEDs, as "LED-lit LCD TVs." Although LED-lit LCD TV utilize a different light source, they generate the screen image in the same manner as CCFL-lit LCD TVs. *Id.* ¶ 40. LED-lit LCD TVs "quickly c[a]me to dominate" the U.S. market for flat-panel televisions. *Id.* ¶ 19.

Another type of television exists, "which employ[s] a fundamentally different technology that is still several years away from availability at prices accessible to mainstream purchasers." Compl. ¶ 56. Plaintiffs refer to these TVs as "Actual LED TVs." These televisions use LED displays instead of the LCD or plasma displays described above. *Id.* ¶ 56.

### B. The Marketing of LED TVs

When LED-lit LCD TVs were first introduced into the market, they were universally marketed as "LCD TVs." Compl. ¶ 43. No effort was made to advertise or designate the product line by the light source used to light the LCD panel. *Id.* Sharp's initial LED-lit LCD TVs were similarly identified and advertised as LCD TVs or LED-backlit LCD TVs. *Id.* ¶ 44. Plaintiffs allege that the LED-lit LCD TVs marketed in this manner "did not sell well." *Id.* ¶ 45. They were priced higher than comparable CCFL-lit LCD TVs, and consumers continued to purchase CCFL-lit LCD TVs despite the alleged benefits of LED backlighting. *Id.*

Sharp then changed strategies and began marketing its LED-lit LCD TVs as LED TVs. It described the LED TVs "as a new, advanced, technologically superior 'type' of television . . . , which was allegedly different from and better than LCD TVs." Compl. ¶ 47. Accordingly, Sharp changed its cartons to refer to the LED-lit LCD TVs as "LED TVs," "LED HDTVs," "LED Smart TVs," or as having an "LED HD Picture." *Id.* ¶ 48. In addition, for years Sharp's website directed consumers to choose from LCD TVs and LED TVs, with no explanation that the LED TVs have LCD displays. *Id.* ¶ 52. Sharp has also "used circulars, newspaper and magazine advertisements, and point of sale display materials to further its deception." *Id.* ¶ 53.

Plaintiffs claim that Sharp's marketing of its LED TVs is false and misleading because Sharp fails to disclose that its references to LED refer to the light source that illuminates the LCD panel rather than the display technology itself. *Id.* ¶ 7. Plaintiffs allege that Sharp's marketing is "designed to falsely suggest that the televisions at issue are not LCD TVs at all, but an entirely different, improved, and technologically advanced class or species of television." *Id.* In reality, both types of televisions are "functionally identical" because they use the same LCD panel to generate the screen image. *Id.* ¶¶ 7, 38-41, 52.

Plaintiffs allege that this marketing strategy has increased Sharp's sales of its LED-lit LCD TVs. Compl. ¶ 49. Plaintiffs further allege that Sharp's strategy has allowed Sharp to charge a premium for LED-lit LCD TVs, even though those televisions are not inherently superior to CCFL-lit LCD TVs. *Id.* ¶¶ 60-61.

### C. Named Plaintiffs

Plaintiff Jason Popejoy is a citizen of California and purchased a Sharp-brand LED TV, model number LC60LE550U. Compl. ¶ 10. Plaintiff Joe Sawyer is a citizen of North Carolina and purchased two Sharp-brand LED TVs, model numbers LC70LE632 and LC80LE857. *Id.* ¶ 11. Plaintiff Daniel Sullivan is a citizen of Massachusetts and purchased a Sharp-brand LED TV, model number LC42LB150U. *Id.* ¶ 12. Each Plaintiff alleges that he "selected Sharp's 'LED TV' model because of Sharp's marketing assertions on the carton containing the television that it was an 'LED TV.'" *Id.* ¶¶ 10-12.

Plaintiffs allege that they and other purchasers were misled into believing that they were purchasing an LED TV, not the LED-lit LCD TV that they actually received. Compl. ¶ 62. Plaintiffs maintain that they would not have purchased or would have paid less for their televisions had they known the truth. *Id.* Plaintiffs jointly seek to assert a nationwide class action against Sharp. *Id.* ¶ 65. Additionally, (1) Plaintiff Jason Popejoy brings this action on behalf of himself and all other members of a California class; (2) Plaintiff Joe Sawyer brings this action on behalf of himself and all other members of a North Carolina class; and (3) Plaintiff Daniel Sullivan brings this action on behalf of himself and all other members of a Massachusetts class.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

## III. DISCUSSION

Plaintiffs' Complaint asserts claims under the consumer protections statutes of New Jersey, California, North Carolina, and Massachusetts.[1] To state a claim under the consumer protection statutes referenced in the Complaint, Plaintiffs must allege that Sharp made statements likely to deceive an average or reasonable customer. *See Conner v. Perdue Farms, Inc.*, No. 11-888, 2013 WL 5977361, at *6 (D.N.J. Nov. 7, 2013) ("One of the threshold questions in deciding a case under the NJCFA is whether a statement has the capacity to mislead the average or reasonable consumer."); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1130 (N.D. Cal. 2013) (quoting *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)) ("The standard for establishing a violation of California's UCL, FAL, and CLRA is the 'reasonable consumer' test, which requires a plaintiff to 'show that members of the public are likely to be deceived' by the business practice or advertising at issue."); *Hager v. Vertrue, Inc.*, No. 09-11245, 2011 WL 4501046, at *5 (D. Mass. Sept. 28, 2011) (quoting *Aspinall v. Philip Morris Cos., Inc.*, 813 N.E.2d 476, 488 (Mass. 2004) ("Conduct is deceptive when it has 'the capacity . . . to entice a reasonable consumer to purchase the product.'"); *Spartan Leasing Inc. v. Pollard*, 400 S.E.2d 476, 482 (N.C. App. Ct. 1991) (citing *Johnson v. Insurance Co.*, 266 S.E.2d 610 (N.C. 1980) ("A practice is deceptive if it has the capacity or tendency to deceive the average consumer . . . .").

---

[1] Specifically, Plaintiffs assert claims under (1) New Jersey's Consumer Fraud Act, (2) California's Unfair Competition Law, (3) California's False Advertising Law, (4) California's Consumer Legal Remedies Act, (5) North Carolina General Statues §§ 75-1.1 and 75.16, and (6) Massachusetts General Laws Chapter 93A §§ 2 and 9.

A reasonable consumer is not "expected to look beyond . . . the front of the box." *Williams v. Gerber Products Co.*, 552, F.3d 934, 939 (9th Cir. 2008). However, a reasonable consumer will read the text prominently displayed on a products' packaging, including any "qualifying language." *Freeman v. Time Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (finding that promotional sweepstakes mailers stating that plaintiff won a sweepstakes with language in smaller type indicating that plaintiff would win only if he returned a winning prize number was not deceptive); *see also Ciser v. Nestle Waters N. Am., Inc.*, No. 11-05031, 2013 WL 5774121, at *5 (D.N.J. Oct. 24, 2013) *aff'd*, 596 F. App'x 157 (3d Cir. 2015) (holding, despite plaintiff's allegations that defendant's "bills were confusing" and that there was an inconsistency between [the defendant's] website and its invoices," that the plaintiff could not plausibly allege that it was misled because the defendant disclosed that it might charge a late fee); *Rooney v. Cumberland Packing Corp.*, No. 12-0033, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing claim that "sugar in the raw" was misleading because the box "clearly indicate[d] that the product contain[ed] natural cane turbinado sugar").

Plaintiffs have not adequately alleged that a reasonable consumer could be deceived by Sharp's marketing. Plaintiffs base their claims entirely upon their allegation that they each saw and relied on "Sharp's marketing assertions on the carton[s] containing the television[s]." Compl. ¶¶ 10-12. But the cartons for the model numbers cited in the Complaint state – on every side of the carton including the front – that the product is both an "LED TV" and a "Liquid Crystal Television." Cert. of Jeremy M. Creelan Exs 3, 4, 5 & 6, ECF No. 14.[2] And although Plaintiffs argue in their opposition brief that they were deceived by misrepresentations made through multiple marketing channels, those allegations are absent from the Complaint. *See Commonwealth of Pa. ex. Rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). The Court will thus dismiss the Complaint and deny Defendant's motion to strike as moot.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. The Court shall grant Plaintiffs thirty days to file an Amended Complaint consistent with this Opinion. Plaintiffs' motion to strike is **DENIED**. An appropriate order follows.

---

[2] Because the cartons are "integral" to Plaintiffs' claims, the Court may properly consider them. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Young v. Johnson & Johnson*, No. 11-4580, 2012 WL 1372286, at *3 n.3 (D.N.J. Apr. 19, 2012) (considering product packaging in consumer fraud claim).

                                                  /s/ William J. Martini  
                                           **WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 18, 2015**